BRADFORD *v.* FOSTER.

(*Knoxville.*     September  18,  1888.)

1. SPECIFIC PERFORMANCE. *Contracts enforceable.* "*Options.*" *Consideration.*

Defendant having bid off lands held in common by complainants and others, at a chancery sale thereof for partition, and not being able to give the required security for the purchase price, agreed in writing with complainants that, in consideration of their waiver of such security, they should have the option to purchase the lands from him, at any time within two years, at the amount of his bid, with interest. The sale was reported and confirmed, and title vested in defendant pursuant to this agreement. Complainants having elected, within the two years, to purchase the lands at the price stipulated, offered to perform said agreement, and demanded conveyance, which was refused by defendant. Complainants filed bill for specific performance.

*Held:* That said agreement is supported by a sufficient consideration; that it was irrevocable by defendant, and stood open for complainants' acceptance at any time within two years; and that complainants, having within that period exercised their option to take under it, and tendered performance, are entitled to specific performance thereof.

Cases cited and approved: Cherry *v.* Smith, 3 Hum., 19; 8 Wall., 358.

Case cited and overruled: Gillespie *v.* Edmondson, 11 Hum., 553.

2. SAME. *Same.    Effect of subsequently given notes.*

Complainants' right to specific performance of such agreement is not affected by the fact that defendant, after its execution, gave security on his notes for the purchase price of the land, especially if the security given was not solvent, and, although accepted by the Master, would have been rejected on exception by the parties.

3. SAME. *Same.    Purchase of entire estate by a tenant in common.*

Nor by the fact that defendant's agreement was made with, and for the benefit of, only part and not all the tenants in common. A tenant in common may legally purchase the entire estate for himself in such case. A third person could not, however, make the question if the purchase were illegal.

Bradford *v.* Foster.

4. SAME. *Same. Champerty.*

Nor by the fact that complainants, in order to raise money to pay for the lands, had contracted a portion of it to third persons who were not parties to the original agreement. Such contract is not champertous.

5. SAME. *Tender. By check. Waiver of objection.*

Objection that tender of the price of land, in an action for specific performance of a contract for its sale, was made by check accompanying the bill, cannot be made after final decree, upon petition for rehearing.

(See Polk *v.* Mitchell, 85 Tenn., 634.)

6. SAME. *Same. Same. Check is not payment.*

The check should, in such case, be treated as a mere offer to pay the money into Court, and not as payment; and, in the event of a decree in complainant's favor, he should be required to pay the money into Court.

7. SAME. *Same. Tender unnecessary.*

Formal tender of the purchase price of land is not required of the vendee before making application for specific performance of the contract of sale, where the vendor denies all liability under the contract.

(See Pearson *v.* Douglass, 1 Bax., 151.)

---

FROM MARION.

---

Appeal from Chancery Court of Marion County. S. A. KEY, Ch.

W. D. SPEARS, BROWN & POPE, and DODSON & MOON for Complainants.

N. H. BURT for Defendant.

LURTON, J. This is a bill filed to obtain the specific performance of an agreement for the sale of certain mountain lands described in the plead-

ings.   The contract of sale was executed by the defendant Foster, and is as follows:

"J. W. BRADFORD *et al.*
*v.*
SARAH A. LEATMAN *et al.*   } In Federal Court at Chattanooga, Tenn.

"I, as purchaser of the lands in this case at public sale, under decree in this cause, on the 29th of June, 1885, at the price of $2,650, agree with Messrs. Dodson & Moon, attorneys for complainants, that in consideration that the said Dodson & Moon, attorneys, consent that my individual notes be taken without security for the amount of my bid, I will and do hereby consent that they, for their clients, the complainants, shall have the right to purchase from me the lands sold in the above case, and purchased by me, by paying to me the amount of my bid, with interest, at any time within the next two years from this date, it being optional with them to purchase said lands.

"CHARLES FOSTER."

The facts necessary to a proper understanding of this agreement are these: Patterson B. West had died intestate, the owner of several large tracts of mountain lands.   His heirs were numerous, and scattered through several States.   Some years after descent cast, J. W. Bradford, one of these heirs, who was entitled to an interest of one-fifteenth, filed an original bill in the Federal Court at Chattanooga praying for a sale of these West lands.

Bradford *v.* Foster.

All the other heirs were made defendants. Chas. Foster, who for many years had acted as the agent for the heirs in looking after this property, intervened by petition, and was allowed to assert a claim for compensation due him as such agent. Such proceedings were had as culminated in a decree in favor of Foster against the heirs for about $2,000. The lands were, under the prayer of the original bill, ordered to be sold upon a credit of six, twelve, and eighteen months, except a cash payment of five per cent. The purchaser was required to execute notes with personal security for the deferred payments. The proceeds of sale were decreed to be applied, first to the payment of costs and attorneys' fees, second to the payment of the decree in Foster's favor, and remainder to the heirs entitled. At the sale had under this decree Foster bid in the lands at the price of $2,650, but was unable to give solvent personal security upon his purchase notes, as required by the decree. To meet this difficulty the contract above set out was entered into between Messrs. Dodson & Moon, counsel for complainant, but who likewise represented two of the defendants, Mrs. Cowden and Mrs. Fall, sisters of J. W. Bradford, the original complainant. These three interests together represented a one-fifth share in the West lands, and these parties are the complainants, and claim to be equally interested under the contract made by their attorneys, Dodson & Moon. The relief sought is resisted upon several grounds, which have been very

earnestly pressed upon us by the solicitor for defendant. The first and perhaps principal defense interposed, both by demurrer and answer, is that the contract is unilateral, and is without consideration, and hence, upon both grounds, null and void. The contract in question, when analyzed, is nothing but an offer to sell the lands mentioned therein for a price specified at any time within two years The party to whom the proposal is made is not, of course, bound to take the lands; he is given an option to do so or not, as he may elect.

It is claimed that the fact that the proposed vendee is not bound to take the lands makes the contract a nullity, and that the vendor cannot, or ought not, be compelled to perform a contract which he could not compel the vendee to comply with. This is unsound. Before acceptance by the vendee the vendor could not compel him to take the land, but after acceptance the vendee would be as much bound as the vendor.

Before acceptance such an agreement can be regarded only as an offer in writing to sell upon specified terms the lands referred to. Such an offer, if based upon no consideration, could be withdrawn by the seller at any time before acceptance. It is the acceptance, while outstanding, which gives an option not given upon a consideration vitality. If, however, an offer to sell is made in writing, and for a valuable consideration time is given within which it shall stand open for acceptance, such an option is irrevocable. It is based upon a

consideration, and has all the elements of a contract. Such a contract is a conditional agreement. Upon the vendee accepting the offer, a contract of sale between the parties is complete.

The case of *Gillespie* v. *Edmondson*, 11 Hum., 553, is apparently in conflict with the view here announced. It is likewise in conflict with the early case of *Cherry* v. *Smith*, 3 Hum., 19. The learned judge writing the opinion in the latter case is the author of the opinion in the earlier case, and yet it is not cited. We are of opinion that the opinion in the case of *Cherry* v. *Smith* is the sounder view of the law, and the case of *Gillespie* v. *Edmondson*, in so far as it conflicts with *Cherry* v. *Smith*, or the views herein announced, is overruled. The view we have taken has the support of the great weight of authority, and clearly rests upon the well recognized principles governing contracts. 2 Parsons on Contracts, 375; Pomeroy on Contracts, Secs. 167 and 170, and pages 235, 238; *Willard* v. *Taylor*, 8 Wall., 358.

At the September Term, 1887, of this Court, in an unreported case of *Bull* v. *Beeson*, we announced the view herein expressed. The contract under consideration rested upon a valuable consideration— the assent of Dodson & Moon, complainant's counsel, to a confirmation of the bid of Foster without solvent personal security upon the purchase notes.

That Foster, in fact, gave notes with the signature of a surety attached is of no importance. This was after the agreement with Dodson & Moon, and the

surety given was confessedly insolvent, and an objection upon the part of Dodson & Moon would undoubtedly have prevented confirmation, although the Clerk had accepted the surety offered. That Dodson & Moon did not represent all the parties is not material; they only contracted for themselves and their clients. If another party had interposed objection to the confirmation it would probably have defeated confirmation; but in this result complainants would likewise have suffered the loss of their option. The defeat of the sale to Foster would have annulled the option to complainants.

It is next urged that inasmuch as this agreement was not made for the benefit of all the tenants in common interested in these lands, but alone for the benefit of such of them as were represented by Dodson & Moon, that it operated as a fraud upon the other heirs, and ought not to be enforced. Whatever may be the rights of the co-tenants of complainants to share in the benefit of the contract made by complainants, it is not an objection which can be urged by defendant. Indeed, in the absence of fraud, we can see no objection to one co-tenant becoming the purchaser of the entire estate, either at the Master's sale or from a purchaser at such sale. The sale was had for the very purpose of severing their interests, and we know of no rule of law or ethics which was violated by the agreement in question.

The objection that the complainants have parted with a part of their interest under this contract

Bradford *v.* Foster.

is next urged. The proof shows that the complainants have entered into an agreement by which certain other persons, not parties to the contract, have agreed to furnish the money necessary to complete the purchase from Foster in consideration of a portion of the lands. This is entirely legal. We cannot see how such an arrangement can be deemed champertous. The agreement, as proven, is nothing more or less than the sale of an interest in the option.

The refusal of defendant, when approached by the attorney of complainants, to even consider the question of a re-purchase, and his contention that he was not bound by his agreement, rendered a formal tender of the purchase money a meaningless form. This bill was thereupon filed, and within the two years allowed for a re-purchase. The bill tendered to defendant the purchase money and interest, and as an evidence of good faith and willingness to comply there was filed with the Clerk a check for the amount due, payable to the Clerk and Master. That this check has not been cashed is doubtless due to the fault of the Clerk or his deputy in never presenting the same. Defendant could at any moment have caused its presentation for payment, or asked a rule upon complainants to have the money paid into Court thereon. No objection was taken by demurrer or otherwise to the form of tender made by the bill. On the contrary, defendant, by demurrer and answer, has at all times strenuously denied the right of complainants to compel him to convey the lands under his agreement.

The objection that the tender of payment made in the bill was by check came too late, it being made after final decree, and upon petition for rehearing. The plea of ignorance of the dsposit of the check with the Clerk is no excuse for such delay. The check, however, cannot be treated as the payment of the money into Court, it must be held as a mere offer to pay, supported by a check as an evidence of willingness and good faith. It follows that the Chancellor was in error in treating the purchase money as having been actually in Court. Title will not be divested until complainants pay into Court the full sum of $2,650, with interest from date of Foster's purchase to date of such payment. They will be allowed thirty days from date of filing this opinion to pay the fund into the hands of the Clerk of this Court, or the Clerk of the Chancery Court. Upon doing so title will be d vested. A sufficiency of this fund may be impounded by complainants upon giving bond in double the amount of the fund retained, conditioned to pay all costs and damages resulting from improperly retaining such fund, to meet any decree that may be recovered against defendant on account of waste committed by him while the option was outstanding. The cause will be remanded for an account of such waste, under proper decrees to be entered hereafter. The costs of the appeal will be divided between complainants and defendant Foster. The decree of the Chancellor, except as herein modified, will be affirmed.